UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦

**CRAIG HENRY,**

                                      **Plaintiff,**

                            -v-                                        1:10-CV-39 (NAM/DRH)

**CITY OF ALBANY POLICE DEPARTMENT;
EUGENE DUDA, Investigator; SCOTT GAVIGAN,
Detective; and JOHN DOE, Police Officer,**

                                      **Defendants.**

✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦

APPEARANCES:

Craig Henry
Altamont House
45 S. Ferry Street
Albany, NY 12202
Plaintiff, *pro se*

John Joseph Reilly, Esq., City of Albany Corporation Counsel
Andrew H. Wood, Esq., Assistant Corporation Counsel
City Hall
24 Eagle Street
Albany, New York 12207
Attorney for Defendants City of Albany Police Department and
Gavigan

Hiscock & Barclay LLP
Michael J. Smith, Esq., of counsel
50 Beaver Street
Albany, New York 12207-2830
Attorney for Defendant Eugene Duda

**Hon. Norman A. Mordue, Chief U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### INTRODUCTION

      Presently before the Court are motions for summary judgment (Dkt. Nos. 45, 49) in this

*pro se* action under 42 U.S.C. § 1983.  Plaintiff claims that defendant Scott Gavigan ("Gavigan")

and/or Eugene Duda ("Duda") used excessive force in arresting him, causing him to sustain a broken ankle. Gavigan is a police officer with defendant City of Albany Police Department ("City"), and Duda is an Investigator with the Albany County Sheriff's Department. As explained below, the Court denies the motions.

## COMPLAINT

In his complaint, plaintiff claims that, on October 6, 2008, he was entering a grocery store near his residence in Albany, New York, when he was "approached from behind, [and] grabbed by his shirt preventing him from entering." He turned to see who had grabbed him and "noticed two police officers in uniform," defendants Gavigan and Duda. One of the two placed plaintiff's left hand in a handcuff, then plaintiff was "swept off his feet landing on his stomach, left hand behind his back, still in a handcuff." Plaintiff states that "his right hand was underneath his stomach, unable to move because of the pressure placed onto his back by one of the police officer's knee or foot." One of the officers then "stomped" on his right ankle, breaking it. The officers then pulled plaintiff to his feet, but he was unable to stand on his right leg. According to plaintiff, as he was being conveyed to a hospital in an ambulance, "Officer John Doe, a police officer at the Albany city police dept. sat next to plaintiff [in the ambulance], read plaintiff his rights and then placed plaintiff under arrest." The following day, plaintiff underwent surgery to repair the ankle. The complaint seeks compensatory damages and a "declaratory judgment" determining that defendants subjected him to excessive force. The Court construes the complaint and plaintiff's other submissions to assert a Fourth Amendment claim that defendants used unreasonable force and/or failed to intervene in another officer's use of unreasonable force in effecting his arrest.

-2-

## THE MOTIONS

On their summary judgment motions, defendants do not dispute that plaintiff's ankle was broken during the arrest. Nor do they dispute that Gavigan and Duda participated in the apprehension and arrest of plaintiff. The City and Gavigan argue, however, that plaintiff cannot identify Gavigan as the person who broke his ankle. Similarly, defendant Duda contends that plaintiff has no competent evidence that it was Duda who broke his ankle.

Defendants rely in part on plaintiff's testimony at his New York General Municipal Law 50-h hearing on January 22, 2009, as follows:

> Q. Now, first off, Mr. Henry, I believe you stated it was Scott Gavigan and Detective Duda –
> A. Yes.
> Q. – that originally stopped you?
> A. Yes.
> Q. In your notice of claim you stated it was Detective Gene McNally.
> A. Yes.
> Q. How did you come to –  why were you stating Gene McNally?
> A. Because at the time I thought that Eugene Duda and Mr. Gavigan were the arresting officers, but when I got to the hospital, I didn't know until Detective Gene McNally interviewed me and interrogated me pertaining to the robbery that took place. And I didn't know up until I got indicted, when I got the actual paperwork back, who was who and who wasn't. So, that's when I took the initiative to find out, and I realized that I was wrong by placing Gene McNally as the officer in front of the store who approached me.
> A. So, did Mr. McNally approach you originally?
> A. No. No, he didn't.
> Q. Are you still making a claim against McNally?
> A.  No. No, I'm not.
> Q.  So your only claim right now is against –... Are you alleging you were approached first by Detective Gavigan or Detective Duda?
> A. I don't know what's the difference between the two, so I don't know.
> Q. How did you learn that it was these two individuals that first approached you?
> A. When I got indicted. They have a sheet they give you of your indictment, and it says in the indictment that I was resisting arrest and that the pocketknife I had on my belt, my intent was to use it against Investigator Duda and Detective Scott Gavigan. It says that I was fighting with those officers and the

> officer who was in the ambulance with me. I don't know his name so that's when I put one and one together....
>
> \*\*\*

At the 50-h hearing, in recounting the events of October 6, 2008, plaintiff testified:

> A. ... So, when I got out of the Jeep on the corner, I was walking into the store .... The Jeep makes a left, and when I'm grabbed by the officer, I could see the Jeep being pulled over by a police car....
> Q. Yup.
> A. And so I'm like, well – they said, "Put your hands behind your back." All right? That's where...
> Q. Okay. All right, so basically ... you just got out of the Jeep –
> A. Just got out of the Jeep.
> Q. – and you're walking to the store and you're stopped by Gavigan and Duda –
> A. Yeah?
> Q. – correct?
> A. Yup.
> Q. And what did they ask you to do right away?
> A. Put my hands behind my back.
> Q. Did you comply with them?
> A. No, I didn't comply exactly, because I wanted to know exactly what I did, and if I was being placed under arrest or not. I wanted to know what I did wrong.
> Q. And what was their response when you did not put your hands behind your back?
> A. "Stop resisting."
> Q. And at that point in time did you put your hands behind your back?
> A. My left hand, he took it and he put my left hand in the cuff, and I kept asking, "What did I do?"
> Q. Were you pulling your hands away at all or trying to get your arm free?
> A. No, no, no.
> Q. Okay, then what happened?
> A. They was grabbing me and they started swinging me and they said, "Stop resisting." Yelling real loud.
> Q. You say they grabbed you. Was it just one officer or two officers?
> A. Two, I believe.
> Q. And they were swinging you around?
> A. Yeah.
> Q. Did one have your hands and one have your legs?
> A. My shirt. My shirt.
> Q. So --
> A. One was grabbing – trying to grab my arm, and I tossed around, and I ended up on the ground. That's when I was face down on the ground.

Q. Okay. They put both handcuffs on you? Were they able to get both hands cuffed at that point in time?
A. Well, no. My hands weren't cuffed until I felt the excessive force on my ankle.
Q. Okay.
A. My hand was underneath my stomach. I felt somebody step on my –
Q. You say "excessive force." You have to be more specific than that. A lot of things could be considered force. ...
A. He stepped on my ankle. That's when I started screaming.
Q. You were on the ground at this point in time?
A. Yeah, I was.
Q. Were you in the process of being lifted up?
A. No, I was face down on the ground.
Q. And they still didn't have handcuffs on you at this point in time?
A. No, they had the left handcuff on.
Q. Were they trying to get your other arm?
A. Yeah, but when I fell on the ground, my hand was underneath my stomach and somebody was pushing into – their foot into my back and I couldn't get my arm out from underneath and when I felt somebody step on my ankle, that's when I – I just gave them my hand.
Q. Okay.
A. And at that time it was just more than those two officers.
\*\*\*
Q. Okay. So you were lying face down?
A. Yes
Q. And you say somebody stepped on your ankle.  How many officers were there at that point in time?
A. When I got a broken ankle, four or five of them.
\*\*\*

Plaintiff's responses to the First Set of Interrogatories include the following:

Interrogatory No. 5: Specify the factual basis for the claim that the officers interacting with the Plaintiff in [the] complaint were Scott Gavigan and/or Eugene Duda.

Answer: [Plaintiff cites to Count Six in his indictment in New York State Supreme Court, Albany County, for resisting arrest on October 6, 2008, which charges that plaintiff] ...did intentionally prevent or attempt to prevent Investigator Eugene Duda of the Albany County Sheriff's Office and/or Detective Scott Gavigan a police officer with the City of Albany Police Department from effecting an authorized arrest of himself by fighting with Inv. Duda and/or Det.

|                      |                                                                                                                                                                                                                                                              |
|----------------------|--------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|
|                      | Gavigan to such an extent that other police officers needed to assist in placing the defendant under arrest....                                                                                                                                              |
| Interrogatory No 6:  | Prior to October 6, 2008, had plaintiff met or had any previous contact with Eugene Duda?...                                                                                                                                                                 |
| Answer:              | No.                                                                                                                                                                                                                                                          |
| Interrogatory No. 7: | Which of the two officers named in [the] complaint ... did the following as alleged in [the] complaint: <br>1. Swept the plaintiff off his feet. <br>Answer: Scott Gavigan and Eugene Duda. <br>2. Placed a knee of foot into plaintiff's back. <br>Answer: Either Scott Gavigan, Eugene Duda, and/or other police officers who assisted in placing plaintiff under arrest. |
| Interrogatory No. 8: | Which of the two officers is claimed to have stomped on plaintiff's right ankle...?                                                                                                                                                                          |
| Answer:              | Eugene Duda                                                                                                                                                                                                                                                  |
| Interrogatory No. 9: | What is the factual basis for plaintiff's identification of that person?                                                                                                                                                                                     |
| Answer:              | While at Albany Correctional Facility I was escorted [for medical treatment]... on several occasions by correction Officer "John Ricki," who verbally stated, and I quote: "That was my buddy that broke your ankle." When asked who? he then stated, "The officer who rode in the ambulance with you," which to be precise, is "Eugene Duda." |

In support of their contention that plaintiff cannot identify Gavigan as the person who broke his ankle, the City and Gavigan submit an affidavit from Gavigan stating that he is a police officer with the City; that on October 6, 2008, he was working with Duda in connection with the Albany County Sheriff Department's Drug Interdiction Unit; that after hearing on the radio that police were searching for a black Jeep vehicle that had been seen leaving the scene of a bank robbery, they saw a black Jeep Liberty stop in front of a store; that they saw a black male, who Gavigan later learned was plaintiff, exit the Jeep and enter the store, carrying two bags; that the Jeep then pulled away from the curb; and that Gavigan and Duda followed Henry into the store to question him about the robbery, while other officers followed the Jeep. Gavigan further affirms:

-6-

> That I was in plain clothes, but wearing a vest that read "POLICE" on the front.
>
> That in order to protect our safety and the safety of the others nearby, I performed a "pat-down" search of the Plaintiff to ensure that plaintiff was not carrying a weapon.
>
> That while performing the "pat-down" search, I realized that Plaintiff had a knife in his possession and that Plaintiff was making attempts to reach said knife.
>
> That while trying to remove the knife from Plaintiff, Plaintiff became combative toward myself and Investigator Duda.
>
> That Plaintiff pushed myself and Investigator Duda outside the store.
>
> That while we were outside and attempting to place Plaintiff in handcuffs, other officers arrived at the scene to assist me and Investigator Duda in placing Plaintiff in handcuffs.
>
> That Plaintiff continued to push the other officers and caused the other officers to fall to the ground with Plaintiff.
>
> That as soon as the Plaintiff and the other officers went to the ground, I went back inside the store to look inside the bags that Plaintiff was carrying.
>
> That while searching the bags that Plaintiff was carrying, I discovered the clothing that the robbery suspect was described to be wearing during the robbery.
>
> That at no time during my encounter with Plaintiff did I ever hit, punch, kick or stomp on the Plaintiff.
>
> That I did not do anything to cause the Plaintiffs ankle to break or become broken.

(Paragraph numbering omitted.)

Defendant Duda moves (Dkt. No. 45) for summary judgment on the ground that plaintiff has no competent evidence that Duda is the person who broke his ankle. He submits an affidavit from Albany County Corrections Officer John Ricci, stating:

> Although your deponent is aware that Mr. Duda is an Investigator employed by the Sheriff's Department, your deponent has never met him and is certainly not "your buddy."
>
> As a Corrections Officer employed at the Albany County Correctional Facility, I would have had no reason to know about the events of June 10 [*sic*], 2008. I have never spoken to Mr. Duda or the Plaintiff concerning them. As to why Mr. Henry would have identified me as the source of his information, your deponent can only speculate but he knows me by name based upon his having been incarcerated at the Albany County Correctional

>  Facilities at various times on units in which I have worked or would have had contact.
>
>  I never had a conversation with Mr. Henry concerning Investigator Duda during any transport of Plaintiff to doctor's visits. His allegations in that regard are totally false. It is my intention to, if subpoenaed, testify at trial consistent with the assertions stated above.

(Paragraph numbering omitted.)  There is no affidavit from Duda.

## DISCUSSION

Summary judgment is appropriate when there is no genuine issue with regard to any material fact, and the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Stated otherwise, summary judgment is appropriate "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party[.]" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  When deciding a summary judgment motion, the court must "resolve all ambiguities and draw all factual inferences in favor of the party opposing the motion." *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999).  Where, as here, the nonmovant is proceeding *pro se*, the court must read that party's papers liberally and interpret them "to raise the strongest arguments that they suggest." *Id.* (citation omitted).

An excessive force claim arising from an arrest is properly analyzed under the Fourth Amendment's prohibition against unreasonable seizures of the person. *See Graham v. Connor*, 490 U.S. 386, 395 (1989).  A law enforcement officer's use of force is constitutionally excessive within the meaning of the Fourth Amendment when the officer's actions were "objectively unreasonable 'in light of the facts and circumstances confronting [him], without regard to [his] underlying intent or motivation.'" *Maxwell v. City of N.Y.*, 380 F.3d 106, 108 (2d Cir. 2004)

-8-

(quoting *Graham*, 490 U.S. at 397). In evaluating a Fourth Amendment excessive force claim, the factfinder considers the totality of the circumstances, including the nature of the crime, the threat of danger to the officer and the public, and whether the suspect was resisting arrest. *See Jones v. Parmley*, 465 F.3d 46, 61 (2d Cir. 1999). An officer who has a realistic opportunity to do so has an affirmative duty to intervene to protect a citizen from the use of excessive force by another law enforcement officer. *See Curley v. Village of Suffern*, 268 F.3d 65, 72 (2d Cir. 2001).

For purposes of this motion, Gavigan and the City do not deny that plaintiff's broken ankle resulted from the use of excessive force. Rather, they contend that Gavigan is not liable for the injury as a matter of law. Gavigan submits his own sworn statement that he did not stamp on plaintiff's ankle or otherwise cause it to be broken. Gavigan also points to certain statements by plaintiff specifically naming Duda as the officer who broke his ankle. Nevertheless, construing the record liberally to raise all inferences in plaintiff's favor, the Court finds sufficient evidence to deny summary judgment. It is undisputed that plaintiff suffered a broken ankle at some point during his arrest and that Gavigan participated in that arrest. In some submissions plaintiff claims it was Duda who stamped on his ankle; in others plaintiff appears to be uncertain. In his 50-h testimony, plaintiff appears to claim that it was one of the two officers who first approached him, Gavigan or Duda, who stamped on his ankle. Indeed, since plaintiff claims he was injured while he was pinned on the ground face down, it is not surprising that he cannot identify with certainty the person who allegedly stamped on his ankle. Under all the circumstances, questions of fact exist regarding how plaintiff's ankle was broken, whether the injury resulted from the use of excessive force, and whether Gavigan is liable for directly causing the injury by the use of excessive force, for participating in the use of excessive force, or for failing to intervene in the

use of excessive force by others.

Duda argues that he is entitled to summary judgment because plaintiff's only evidence against him is Ricci's alleged statements to plaintiff that it was Duda who broke his ankle. Duda relies on Ricci's sworn denial that he made the statements. Proof that Ricci did not say that Duda caused the injury is not, of course, proof that Duda did not cause the injury. It is undisputed that plaintiff sustained a broken ankle during the course of an arrest in which Duda participated. Under all the circumstances, questions of fact exist regarding how plaintiff's ankle was broken, whether the injury resulted from the use of excessive force, and whether Duda is liable for directly causing the injury by the use of excessive force, for participating in the use of excessive force, or for failing to intervene in the use of excessive force by others.

On this record, plaintiff's inability to identify with certainty the person who allegedly stamped on his ankle does not warrant summary judgment dismissing his claim. Defendants raise no other ground for summary judgment.

## CONCLUSION

It is therefore

ORDERED that the motion (Dkt. No. 45) for summary judgment by defendant Eugene Duda is denied; and it is further

ORDERED that the motion (Dkt. No. 49) for summary judgment by defendants City of Albany Police Department and Scott Gavigan is denied; and it is further

ORDERED that trial counsel will be appointed for plaintiff and the case set down for trial; and it is further

ORDERED that the Clerk serve copies of this Memorandum-Decision and Order in

accordance with the Local Rules of the Northern District of New York.

    IT IS SO ORDERED.

December 7, 2011
Syracuse, New York

_____
Norman A. Mordue
Chief United States District Court Judge